IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSE LUIS URENA BORDEJO,** <br> **Plaintiff** <br> v. <br> **EXCLUSIVE BUILDERS, INC.;** <br> **CHARLES LAKHAN; and MELITA** <br> **LAKHAN,** <br> **Defendants** | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | No. 3:09cv509 <br><br> (Judge Munley) |

## **MEMORANDUM**

Before the court are the defendants' respective motions for summary judgment. The motions are ripe for disposition.

## **BACKGROUND**

Plaintiff Jose Luis Urena Berdejo ("Berdejo") is an unauthorized illegal alien who worked for a company named, alternatively, Ideal Systems, Inc., Ideal Systems Constructions, Inc., or Ideal Systems USA, Inc. ("Ideal"). (Def.'s Statement of Material Facts ("SMF") ¶¶ 2, 9 (Doc. 62)). Berdejo was working on a home construction project at 208 Quail Ridge in Stroudsburg, Pennsylvania ("the Quail Ridge project"). (Id. ¶ 1). Defendant Exclusive Builders, Inc. ("Exclusive") was the general contractor for the home construction but did not do any actual construction on the project. (Id. ¶ 4). Berdejo's employer, Ideal, was Exclusive's subcontractor for roofing and siding at the project. (Id. ¶ 8). Defendants Charles and Melita Lakhan were the mother and son owners of the home under construction. (Macaluso Dep. (Doc. 60-4 at 51-52); Aff. of Charles Lakhan (Doc. 88); Aff. of Melita Lakhan (Doc. 89)).

On November 9, 2008, Berdejo fell from the roof while working on the Quail Ridge project. (SMF ¶ 1). Berdejo was about eleven feet from the ground when he fell. (Berdejo Dep. (Doc. 60-2 at 38)). Another employee grabbed Berdejo but had to let go as Berdejo was hanging off the roof. (Id.

at 44).  Berdejo landed on his back and head, leaving him unconscious. (Id. at 52, 74).  Berdejo's boss, Julio Puma the owner of Ideal was called and came to the job site about one half hour later, but refused to take Berdejo to the hospital.  (Id. at 56-57).  Berdejo believed that Julio Puma refused to take him to the hospital because Puma was afraid to answer questions.  (Id.)  Nine hours later, he was taken to the hospital.  (Id. at 59-60).

Berdejo wore a hard plastic brace for two months, twenty-four hours per day to help discs in his back reposition themselves.  (60-2 at 67-68). After the hard plastic brace, Berdejo wore an elastic girdle for another four months.  (Id. at 68-69).

As opposed to previous employers for whom Berdejo worked, Ideal did not provide safety ropes or harnesses to its roofers.  (Doc. 60-2 at 24-27).  Berdejo at first refused to work on the roof without safety equipment but eventually agreed.  (60-2 at 31).  Berdejo had no contact with anyone from Exclusive at the job site.  (60-2 at 36).

Exclusive is a general contractor who subcontracted all of its house building jobs.  (Macaluso Dep. (Doc. 60-4 at 21)).  The corporation was formed and run by Angela Lillian Macaluso ("Macaluso") and Adrian LoDico ("LoDico"), sister and brother.  (Id. at 30).  There were no other employees. (Id. at 74).  Exclusive did oversee the projects, however.  (Id. at 21). Macaluso and LoDico visited the Quail Ridge job site on numerous occasions– more than twenty times.  (Id. at 18, 28, 67-68).  Macaluso stated that she was not concerned about safety at the project during her visits and she knew of no safety issues.  (Id. at 67-68).  Generally, Macaluso would visit the site when workers were not present.  (Id.) Exclusive did not require hard hats or safety equipment– this was up to the subcontractor according to Macaluso.  (Id. at 68-69).  According to

2

Macaluso, the subcontractor was responsible for the safety of its employees. (Id. at 71). Exclusive and Ideal had nothing in writing as to safety protocol or any specific delegation of safety oversight. (Id. at 70, 72). Exclusive did not provide any training to anyone regarding falls. (Id. at 78). Exclusive did not make efforts to determine whether their contractors were safe. (Id. at 79). Exclusive had no policy regarding safety. (Id. at 81). Macaluso was not familiar with particular Occupational Safety and Health Administration ("OSHA") requirements or aware of the existence of OSHA. (Id. at 82).

Macaluso would generally work in the office while LoDico would oversee job sites. (Macaluso Dep. (Doc. 60-4 at 30)). In relation to safety, Macaluso or LoDico would visit the project and remove debris so that the job site was clear. (Id. at 75-76, 80). LoDico would visit job sites most days to oversee and assist subcontractors. (Id. at 29-30). Generally, Macaluso and LoDico would inspect the work that Ideal performed to make sure it was done properly and so that Ideal could be paid. (Id. at 61-62).

Berdejo's expert, Vincent Gallagher states that: "[Exclusive] permitted Ideal Systems' workers to work in very dangerous conditions in violation of OSHA standards. It is my opinion that they simply did nothing to comply with the standard of care as expressed in Section VIII of my report. It is my opinion that the above failures were a cause of Jose Luis Urena Berdejo's injuries." (Gallagher Report at 23 (Doc. 63 at 40)).

Plaintiff Jose Luis Urena Berdejo filed this action on March 18, 2009 against Exclusive, Ideal Systems, Inc., Ideal Systems Constructions, Inc., Charles Lakhan, and Melita Lakhan raising claims of negligence. (Compl. (Doc. 1)). On August 3, 2009, Exclusive answered the complaint and asserted cross-claims against the existing defendants and Defendant Ideal Systems USA, Inc. (Doc. 15). On September 11, 2009, the plaintiff was

granted leave to file an amended complaint joining Defendant Ideal Systems USA, Inc. (Doc. 19).

On February 2, 2010 the court granted the plaintiff's motions for default judgment against Defendants Charles Lakhan and Melita Lakhan (Doc. 36) and against Defendants Ideal Systems, Inc., Ideal Systems Constructions, Inc., and Ideal Systems USA, Inc. (Doc. 37). (Doc. 42). Subsequently the plaintiff and the remaining defendant, Exclusive, conducted discovery and mediation. On August 19, 2010, Exclusive filed a motion for summary judgment. (Doc. 60).

On September 20, 2010 Defendants Charles and Melita Lakhan filed a motion to strike default judgment for improper service. (Doc. 68).[1] On March 8, 2011 the court granted the motion to strike default judgment and reinstated Defendants Charles and Melita Lakhan. (Doc. 76). These reinstated defendants moved for summary judgment on April 15, 2011. (Doc. 85). The plaintiff objected to the Lakhans' motion for summary judgment because he had not had an opportunity to depose these defendants since their reinstatement. On June 17, 2011 these defendants were deposed. (Doc. 97). On August 9, 2011 the plaintiff filed a supplemental reply to the Lakhans' motion for summary judgment, bringing the case to its present posture. (Id.)

**JURISDICTION**

Because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, the court has jurisdiction over the case. See 28 U.S.C. § 1332 ("district courts shall have

---

[1] The case was stayed upon Exclusive's suggestion of bankruptcy until the United States Bankruptcy Court for the Middle District of Pennsylvania granted relief from the stay and the case was reopened on March 2, 2011. (Docs. 70 - 75).

4

original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]")

**LEGAL STANDARD**

The granting of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

When considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material if it might affect the outcome of the suit under the governing law. Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific

facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial.  Id. at 324.

**DISCUSSION**

The remaining defendants seek summary judgment on all of Berdejo's claims.  We will address the Lakhans' motion and then Exclusive's motion, in turn.

**A. Lakhans' Motion for Summary Judgment**

The Lakhans move for summary judgment on Berdejo's claims, arguing that, as landowners, they owed no duty of care to an employee of a subcontractor.  The general rule in Pennsylvania is that a landowner who hires an independent contractor is not liable for injuries caused by the independent contractor or its employees.  See Beil v. Telesis Const., Inc., 11 A.3d 456, 466 (Pa. 2011) ("For over 100 years, the accepted and general rule regarding liability in our Commonwealth has been that a landowner who engages an independent contractor is not responsible for the acts or omissions of such independent contractor or his employees.") (citing Pender v. Raggs, 35 A. 1135 (1896); Hader v. Coplay Cement Mfg. Co., 189 A.2d 271 (1963); RESTATEMENT (SECOND) OF TORTS § 409).  The Lakhans, as landowners who engaged Exclusive as an independent contractor, are therefore protected, in the first instance, by the general rule.

The general rule, however, is subject to several exceptions.  See RESTATEMENT (SECOND) OF TORTS § 409 cmt. b ("[T]he law has progressed by the recognition of a large number of "exceptions" to the 'general rule.'  These exceptions are stated in §§ 410-429.  They are so numerous, and they have so far eroded the 'general rule,' that it can now be said to be 'general' only in the sense that it is applied where no good reason is found for departing from it.").

Having reviewed the record, and the catalogue of exceptions to the

general rule of non-liability, we conclude as a matter of law that the Lakhans had no duty of care with respect to Berdejo. The only exceptions which might have exposed the Lakhans to liability in this sort of scenario would have been the "retained control exception" found in § 414 of the Second Restatement and the "peculiar risk exception" found in §§ 416 and 427.

Under the "retained control exception," we must determine whether the landowner:

> retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

RESTATEMENT (SECOND) OF TORTS §414 cmt. c; see also Beil, 11 A.3d at 466-67.

The plaintiff's supplemental brief of August 9, 2011 describes the extent of the Lakhans' involvement in the project. Charles Lakhan occasionally drove by the project to check on its progress. (Charles Lakhan Dep. (Doc. 97 at 10)). He was not involved in designing or building the home. (Id. at 9). Charles and Melita Lakhan visited the property with Macaluso on three occasions. (Id. at 11). During one visit the Lakhans inspected tiles. (Id.) Neither Charles nor Melita had any say over Exclusive's subcontractor selection or had any interaction with the subcontractors. (Id. at 11-12; Melita Lakhan Dep. (Doc. 97 at 24)). No workers were at the site when Charles Lakhan visited. (Charles Lakhan Dep. (Doc. 97 at 14).

Melita Lakhan, aside from the three visits to the project with her son

Charles, also visited twenty-five times with her husband; approximately every other week over a year and one half. (Melita Lakhan Dep. (Doc. 97 at 24, 30)). Work was being performed during three visits– tile installation, master bath construction, and painting of the garage. (Id. at 24). Melita Lakhan did not speak to any of the workers. (Id. at 28). For most of the twenty-five visits there were no workers and no progress. (Id. at 30). Melita Lakhan's husband complained to Lillian Macaluso that the house did not have a driveway, gutters, bathroom doors, toilet paper holders, or landscaping. (Id. at 25, 28).

Upon reviewing the record in a light most favorable to Berdejo, there is no genuine issue of material fact as to whether the Lakhans retained any control over Exclusive's or Ideal's methods of work. No evidence suggests that the Lakhans ever gave any directions to their contractor or subcontractors as to how the construction of their home should proceed. No evidence indicates that the Lakhans interfered with the operative detail of their contractor's or subcontractors' work. Thus, no duty arose on the part of the Lakhans.

The "peculiar risk exception" is also inapplicable.[2] The Pennsylvania Superior Court has held that:

> a special danger or peculiar risk exists where:
> 1) the risk is foreseeable to the employer of the independent contractor at the time the contract is executed, i.e., a reasonable

---

[2] The Pennsylvania Superior Court has equated the concepts of "peculiar risk" and "special danger" found in §§ 416 and 427. Lorah v. Luppold Roofing Co., Inc., 622 A.2d 1383, 1385 n.1 (Pa. Super. Ct. 1993). The court has also held that these sections, though explicitly creating a duty in an employer of an independent contractor only towards "others" injured by the independent contractor, also create a duty towards employees of the independent contractor itself. Id. at 1386 n.2.

8

> person, in the position of the employer, would foresee the risk and recognize the need to take special measures; and
> 2) the risk is different from the usual and ordinary risk associated with the general type of work done, i.e., the specific project or task chosen by the employer involves circumstances that are substantially out-of-the-ordinary.

Ortiz v. Ra-El Development Corp., 528 A.2d 1355, 1358 (Pa. Super. Ct. 1987). The Pennsylvania Superior Court, in Lorah v. Luppold Roofing Co., Inc., examined this exception in the case of an iron worker who fell from an unsecured ladder while carrying rebar. 622 A.2d 1383 (Pa. Super. Ct. 1993). The court found that the plaintiff failed the second prong of the Ortiz test, stating:

> The task to be performed-the movement of rebars of nominal weight down a ladder into an excavation pit-does not involve[] a risk that is substantially out of the ordinary at a construction site. To the contrary, the task being performed appears to be nothing more than a common or routine worksite procedure. What made the activity of increased risk was not the activity itself, which is normally of minimal risk, but the failure of the independent contractor (and/or his servants) to take adequate precautions.

Id. at 1386. Here, Berdejo fell from a roof while roofing. That unfortunate occurrence is the primary risk confronted by such a worker. There is no genuine issue of material fact as to whether this roof presented a risk not usually faced by a roofer. As in Lorah, the nature of the Lakhans' roof did not increase Berdejo's risk– rather, it was the lack of fall protection which increased his risk.[3] Accordingly, this exception does not subject the

---

[3] To the extent that § 413 of the Second Restatement of Torts, entitled "Duty To Provide For Taking Of Precautions Against Dangers Involved In Work Entrusted To Contractor," contributes to the doctrine of the peculiar risk exception, that section is also not applicable to the Lakhans. This exception is not applicable in situations where the injury results from risks normally associated with the work. See RESTATEMENT

Lakhans' to liability. For the reasons stated above, we will grant the Lakhans' motion for summary judgment.

## B. Exclusive's Motion for Summary Judgment

Exclusive seeks summary judgment on Berdejo's claims. Alternatively it seeks summary judgment on portions of Berdejo's claims for damages and partial summary judgment with respect to two of Berdejo's allegations. We will address each argument in turn.

## 1. Whether Exclusive Can Be Found Liable to Berdejo

Exclusive argues that it cannot be found negligent because it did not have a duty to Berdejo. Exclusive argues that it entrusted the construction of the Quail Ridge property to Ideal, among other subcontractors, and that Exclusive did not retain any control over the means or methods of Ideal's work. Exclusive cites <u>Leonard v. Commonwealth of Pennsylvania</u>, 771 A.2d 1238, 1241 (Pa. 2001) for the general rule, taken from § 384 of the Second Restatement of Torts, that a contractor is not liable for injuries resulting from work entrusted to a subcontractor. The general contractor in <u>Leonard</u>, Kiewitt/Perini, subcontracted with High Steel to make bridges on Interstate 476. High Steel, in turn, subcontracted with Cornell to erect steel. That contract– the sub-subcontract– provided:

---

(SECOND) OF TORTS § 413 cmt. b ("This Section has no reference to such a general anticipation of the possibility that the contractor may in some way be negligent. It is not concerned with the taking of routine precautions, of a kind which any careful contractor could reasonably be expected to take, against all of the ordinary and customary dangers which may arise in the course of the contemplated work. Such precautions are the responsibility of the contractor; and if the employer has exercised reasonable care to employ a contractor who is competent and careful (see § 411), he is not required to provide, in the contract or otherwise, that the contractor shall take them.").

> [Cornell] agrees to conduct and carry on its work in such manner as to avoid injury or damage to persons or property including its own work and be strictly responsible for damage to persons or property by failure so to do or by [Cornell's] negligence, and shall assume as to its work hereunder all obligations imposed on [High Steel] under the provisions of the General Contract and shall indemnify and hold harmless [High Steel] against such obligations in the same manner that [High Steel] is obligated to indemnify [Kiewit/Perini] and [PennDOT].

Leonard, 771 A.2d at 1242. The court stated, "[t]hus, Cornell, under its subcontract for erection of steel, assumed all of the contractors' responsibilities for safety compliance with respect to its portion of the work. Having fully delegated to Cornell the task of erecting steel, the contractors higher in tier no longer had control over the manner in which that work was done." Id.

It is not apparent to this court, however, that Leonard is dispositive of the issue in this case.[4] Leonard may best be understood as holding that although a general contractor may be contractually obligated by the landowner to ensure the safety of the overall project, the general contractor can, by subcontract, delegate that responsibility to its subcontractors. See Farabaugh v. Pennsylvania Tpk. Com'n, 911 A.2d 1264, 1281 (Pa. 2006)

---

[4] The issues before the Pennsylvania Supreme Court in Leonard were: "whether a general contractor or subcontractor who was not 'present' at the work site may nevertheless be in 'control' of the work site pursuant to contract or law so as to have a duty to make the site safe, and whether such a contractor or subcontractor may delegate such a duty to a subordinate subcontractor. Hence, our review focuses on Commonwealth Court's rationale that Kiewit/Perini and High Steel had no duty to Leonard, in that they had no actual involvement in erection of the steel, they had no presence or control with respect to the work site, they had no control over the manner in which Leonard performed his job, and they had contractually delegated all safety responsibility and control over the work site to Cornell." Leonard, 771 A.2d at 1240.

("The Leonard and Hader lines of cases relate to situations where an employer reserves the right to supervise and inspect an independent contractor. These cases consider whether and to what extent the owner or general contractor has delegated responsibility for the work on the property to a subcontractor.").

Here, Berdejo argues that, in the absence of a contract specifically delegating safety responsibilities from Exclusive to Ideal, Exclusive retained such responsibility. See Young v. Commercial Group, Inc., No. Civ. A. 01-05074, 2005 WL 591199, *6 (E.D. Pa. Mar. 8, 2005). Exclusive argues that safety responsibilities were delegated to its subcontractors. Exclusive argues that "Ideal assumed the duty of safety at this job site, in the absence of any specific written contracts between Ideal and Exclusive Builders, Inc." (Br. Supp. Mot. Dismiss at 5 (Doc. 61)). Thus, the parties, in essence, argue over with whom the duty of ensuring a safe job site resides in the absence of a specific contractual delegation of that duty.

The implication from Leonard is that in the absence of contractual delegation of safety responsibilities to a subcontractor, they remain with the general contractor. Since there is no evidence that Exclusive delegated safety responsibilities to Ideal, there is a genuine issue of material fact as to which party retained that responsibility.[5] Accordingly,

---

[5] See Young, 2005 WL 591199, *6 ("In this case, unlike Leonard v. Comm. Dept. of Transportation, 723 A.2d 735 (Pa. Cmwlth. 1998) . . . there was no clear delegation of the duty to provide safety precautions and to supervise the work being performed. It is not clear that Milric delegated its responsibilities under its contract with Home Depot to CCS in their oral contract which existed at the time of the accident or to anyone else on site. . . . Given the terms of the contract and considering all facts in favor of the plaintiff, it would be possible for a jury to find that as part of its responsibilities under the contract with Home Depot, as general contractor

Exclusive's motion for summary judgment on Berdejo's claims will be denied.

**2. Whether Berdejo Can Seek Lost Earnings as an Unauthorized Alien**

Exclusive argues that Berdejo cannot seek lost earnings because, as an unauthorized alien, he could not have been legally hired to work and earn.  See Hoffman Plastic Compounds, Inc. v. N.L.R.B., 535 U.S. 137, 147 (2002) ("Congress enacted [the Immigration Reform and Control Act of 1986 ('IRCA')], a comprehensive scheme prohibiting the employment of illegal aliens in the United States.  § 101(a)(1), 100 Stat. 3360, 8 U.S.C. § 1324a.").  The United States District Court for the District of New Jersey addressed the issue of "whether an individual can recover for economic losses in the personal injury tort context when that individual cannot legally obtain work in the United States." Kalyta v. Versa Products, Inc., Civ. A. No. 07-1333, 2011 WL 996168, *3 (D.N.J. Mar. 17, 2011).  Noting that the United States Court of Appeals for the Third Circuit has not ruled on this issue, the court turned to other federal districts and New Jersey state law.  The court noted that the Second Circuit, in Madeira v. Affordable Hous. Found., Inc., 469 F.3d 219, 237-43 (2d Cir. 2006), concluded that the IRCA did not preempt New York state law with respect to whether an undocumented alien could receive compensatory lost earning damages.  The district court in Kalyta found that, under New Jersey law, legal

---

Milric was responsible for coordinating the work of its two subcontractors, for supervising, and for taking precautions to protect safety, by at a minimum making sure that the employees were aware of the other work being performed. When considering all of the facts in favor of the non-moving party, we must therefore deny Milric's motion.")

13

employment was not a prerequisite to recovering lost wages in a personal injury action. 2001 WL 996168, *7.

Though we find the opinions of the Second Circuit in <u>Madeira</u> and the District of New Jersey in <u>Kalyta</u> to be persuasive approaches the court must determine whether the issue is otherwise addressed by Pennsylvania law. The Pennsylvania Supreme Court has not squarely addressed whether IRCA precludes a claim for lost earnings in a personal injury suit, but in <u>Reinforced Earth Co. v. W.C.A.B. (Astudillo)</u>, 810 A.2d 99, 105 (Pa. 2002) the court upheld an award of workers' compensation benefits to an illegal alien. We find that this stance is persuasive as to whether an unauthorized alien can recover for economic losses under Pennsylvania personal injury law.

The dissent in <u>Reinforced Earth</u> would have found that the "the policy of the Pennsylvania General Assembly to afford workers' compensation benefits to employees injured in work-related accidents should yield to the injunction of Congressional policy against employment of unauthorized aliens." <u>Reinforced Earth Co.</u>, 810 A.2d at 111 (Newman, J., dissenting). To the extent that the majority disagreed with that position, and to the extent that one of the purposes of Pennsylvania's workers' compensation system is to replace the traditional tort system, we predict that the Pennsylvania Supreme Court would not preclude Berdejo's claims for lost earnings as a matter of law.[6] <u>See</u> 77 P.S. § 481 (2002). Accordingly,

---

[6] We note, as did the court in <u>Kalyta</u>, that there is no evidence in the record that Berdejo fraudulently obtained his job with Ideal– he did not present false documentation. <u>See</u> 8 U.S.C. § 1324c(a); <u>Kalyta</u>, 2011 WL 996168, *1 n.3. An argument could be made that disallowing claims for lost earnings would have the perverse incentive of shielding an employer from tort liability to an unauthorized alien employee, undercutting IRCA's

14

Exclusive's motion for summary judgment on Berdejo's claims for lost earnings will be denied.

**3. Whether Paragraphs 13 and 14 Should be Struck**

Exclusive seeks partial summary judgment on the allegations contained in Paragraphs Thirteen and Fourteen of Berdejo's Amended Complaint. These paragraphs read:

> 13. Defendants failed to provide Plaintiff with any type of workers' compensation insurance.
>
> 14. Defendants failed to require and/or confirm that Defendants' employer, Ideal Systems, Inc., and/or Ideal Systems Construction, Inc., and/or Ideal Systems USA, Inc., carried workers compensation insurance which would have covered the Plaintiff.

(Am. Compl. ¶¶ 13, 14 (Doc. 20)). Exclusive presents a Workers' Compensation Decision in which Berdejo's claims for compensation were denied. (June 30, 2010 Workers' Compensation Decision (Doc. 60-8)). Exclusive argues that a workers' compensation judge's decision can have a preclusive effect in civil proceedings, citing Yonkers v. Donora Borough, 702 A.2d 618 (Pa. Commw. Ct. 1997).

> 'The doctrine of collateral estoppel precludes relitigation of an issue determined in a previous action if: (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.'

Prusky v. Reliastar Life Ins. Co., 502 F. Supp. 2d 422, 429-30 (E.D. Pa. 2007) (quoting Office of Disciplinary Counsel v. Kiesewetter, 889 A.2d 47, 50-51 (Pa. 2005)).

---

provisions fining employers for employing unauthorized aliens. See § 1324a(e)(4)(A).

Here, Exclusive notes that the workers' compensation judge found that "the record fails to establish that Exclusive Custom Builders, Inc. had any involvement with Claimant and certainly fails to establish that Exclusive Custom Builders, Inc. was Claimant's employer as of November 9, 2008." (Id.)  The record in this case does not mention any corporation named Exclusive Custom Builders, Inc.  The defendant in this case is Exclusive Builders, Inc.  There is a reference in the record to a limited liability company named Exclusive Custom Builders, LLC.  Macaluso testified in her deposition, however, that Exclusive Custom Builders, LLC is a newer corporation she started with her friend Endira Bash after she wound down Exclusive– that is, Defendant Exclusive Builders, Inc.  (Macaluso Dep. (Doc. 60-4 at 84-88).  Thus, the workers' compensation judge's finding as to Exclusive Custom Builders, Inc. is not relevant to this case, and the motion for partial summary judgment will be denied.[7]  To the extent that Exclusive also seeks to preclude Berdejo from introducing evidence regarding workers' compensation insurance, such a motion is premature and will be denied.

**CONCLUSION**

For the reasons stated above, the motion for summary judgment of Defendants Charles and Melita Lakhan will be granted and the motion for summary judgment of Defendant Exclusive Builders, Inc. will be denied. An appropriate order follows.

---

[7] Macaluso also testified in her deposition that Exclusive did not keep workers' compensation insurance or require subcontractors to keep the same.  (Macaluso Dep. (Doc. 60-4 at 32, 55)).

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSE LUIS URENA BORDEJO,** | : | No. 3:09cv509 |
| **Plaintiff** | : | |
| v. | : | (Judge Munley) |
| **EXCLUSIVE BUILDERS, Inc.; CHARLES LAKHAN; and MELITA LAKHAN,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this  22nd  day of August 2011, upon consideration of the defendants' motions for summary judgment it is HEREBY **ORDERED** as follows:

The motion for summary judgment of Defendants Charles and Melita Lakhan (Doc. 85) is **GRANTED**.

The motion for summary judgment of Defendant Exclusive Builders, Inc. (Doc. 60) is **DENIED**.

**BY THE COURT:**

  s/ James M. Munley
**JUDGE JAMES M. MUNLEY
United States District Court**